W. George Wailes (SBN 100435)
Kevin B. Jackson (SBN 300193)
AARON, RIECHERT, CARPOL & RIFFLE, APC
900 Veterans Blvd., Suite 600
Redwood City, CA 94063
Telephone:    (650) 368-4662
Facsimile:    (650) 367-8531
Email:        gwailes@arcr.com

Attorneys for Plaintiff, Diane B. Gu

Rick Bergstrom (State Bar No. 169594)
JONES DAY
12265 El Camino Real, Suite 300
San Diego, CA  92130
Telephone:    (858) 314-1200
Facsimile:    (858) 314-1150
Email:        rjbergstrom@JonesDay.com

Attorneys for Defendant
Pharmacyclics, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIANE B. GU,<br><br>   Plaintiff,<br><br>v.<br><br>NANCY CLAYBAUGH,<br>EDWARD M. LIDDY,<br>ROXANNE S. AUSTIN,<br>GLENN F. TILTON,<br>FREDERICK H. WADDELL, AND<br>PHARMACYCLICS, INC.,<br>ADMINISTRATORS OF THE<br>PHARMACYCLICS, INC. CHANGE IN<br>CONTROL AND SEVERANCE PLAN<br><br>   Defendants. | Case No.:  5:16-cv-02106<br><br>STIPULATION AND ORDER TO AUTHORIZE FILING OF SECOND AMENDED COMPLAINT TO ADD DEFENDANTS, DISMISS DEFENDANTS, AND ADD FACTS AND CLAIMS FOR RELIEF; AS MODIFIED |

   IT IS STIPULATED by the parties through their attorneys of record that Plaintiff Diane B. Gu may file the second amended complaint which is attached to this stipulation (without its two exhibits). Defendants consent to Plaintiff's request to amend her first amended complaint to dismiss the following defendants:

203532.1

1.   Edward M. Liddy;

2.   Roxanne S. Austin;

3.   Glenn F. Tilton; and

4.   Frederick H. Waddell;

To add the following defendants:

1.   Mark Naidicz; and

2   Pharmacyclics, LLC; and

To add the following claims and the additional facts to support them:

1.   Second Claim for Relief for ERISA Benefits; and

2.   Third Claim for Relief for Violation of ERISA: Termination to Avoid Paying Benefits. The parties agree that Defendants' response shall be due August 29, 2016.

As a result of this amendment, the parties also request that the Court continue the initial case management conference in this case to any date convenient for the Court after September 19, 2016, and extend the parties' deadlines to comply with Rule 26 and the Court's Civil Local Rules including 3.5, 16-9, and 16-10 concurrently with the continuance of the case management conference to enable the parties to finalize the pleadings, continue settlement discussions, and meet and confer on the Rule 26 issues.

It is so stipulated.

Dated:   July 15, 2016            AARON, RIECHERT, CARPOL & RIFFLE, APC

By: */s/ W. George Wailes*
   W. George Wailes/Kevin B. Jackson
   Attorneys for Plaintiff, Diane B. Gu

Dated:   July 15, 2016            JONES DAY

By: */s/ Rick Bergstrom*
   Rick Bergstrom
   Attorneys for Defendant
   Pharmacyclics, Inc.

203532.1                                   1

STIPULATION AND ORDER TO FILE SECOND AMENDED COMPLAINT NO. 5:16-CV-02106 NC

1  ORDER

2  Based on the parties' stipulation, IT IS ORDERED that Ms. Gu shall file her second

3  amended complaint which is attached to this stipulation and order within ~~ten~~ three days of this

4  order. Ms. Gu shall attach Exhibits 1 and 2 with the second amended complaint filed with the

5  Court. Defendants shall file their responsive pleading by August 29, 2016.

6  The initial case management conference in this case is continued until 10:00 a.m. on

7  _____ September 21 ___, 2016. The deadlines for the pre-conference items listed in the

8  Order Setting Initial Case Management Conference and ADR Deadlines are continued

9  concurrently with this order. Any new defendants must file a consent or declination within

10  30 days.

Dated: July 22, 2016



_____
United States District Magistrate Judge

IT IS SO ORDERED AS MODIFIED
Judge Nathanael M. Cousins

AARON, RIECHERT, CARPOL & RIFFLE, APC
900 VETERANS BLVD., SUITE 600, REDWOOD CITY, CA 94063



# EXHIBIT 1

# EXHIBIT 1

W. George Wailes (SBN 100435)
Kevin Bryce Jackson (SBN 300193)
AARON, RIECHERT, CARPOL & RIFFLE, APC
900 Veterans Blvd., Suite 600
Redwood City, CA 94063
Telephone:    (650) 368-4662
Facsimile: (650) 367-8531
Email:           gwailes@arcr.com

Attorneys for Plaintiff, Diane B. Gu



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| DIANE B. GU, | Case No.:    16-CV-02106 NC |
|---|---|
| Plaintiff, | SECOND AMENDED COMPLAINT FOR VIOLATION OF ERISA AND BREACH OF CONTRACT |
| v. | (29 U.S.C. §1132, 1140, 29 C.F.R. §2575.502c-1) |
| NANCY CLAYBAUGH, MARK NAIDICZ, AND PHARMACYCLICS, LLC, FIDUCIARIES OF THE PHARMACYCLICS, INC. CHANGE IN CONTROL AND SEVERANCE PLAN, PHARMACYCLICS, INC., | |
| Defendants. | |

Plaintiff, Diane B. Gu, alleges as follows:

## I.   INTRODUCTION

1. This action is brought on behalf of Diane B. Gu under the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001, et seq. ("ERISA"). Ms. Gu seeks to recover benefits due and enforce her rights under the terms of the Pharmacyclics, Inc. Change in Control and Severance Plan (the "Severance Plan"), reinstatement and restitution including back pay and lost benefits, and to obtain equitable and statutory relief for to the administrator's failure to comply with the terms of the Severance Plan and ERISA. Ms. Gu seeks a determination that she is entitled to the administrator's benefits file, statutory

202560.1                                           1

penalties for the administrator's refusal to provide the file, reinstatement and back pay and lost benefits, and/or severance benefits under the Severance Plan and ERISA as a result of Pharmacyclics' termination of her employment, and her attorneys' fees and costs.

## II. JURISDICTION AND VENUE

2. The Court has jurisdiction of these claims for relief which involve federal statutes under Section 1331 of Title 28 of the United States Code.

3. Venue is proper in this District Court under Section 1132(e)(2) of Title 29 of the United States Code.

## III. THE PARTIES

4. Plaintiff Diane B. Gu ("Ms. Gu") is an individual residing in Santa Clara County in California. References to Ms. Gu include her agents.

5. Defendant Pharmacyclics, LLC is a wholly-owned subsidiary of AbbVie Inc. ("AbbVie") and successor-in-interest to Defendant Pharmacyclics, Inc., the plan sponsor and original administrator of the Severance Plan. The two Pharmacyclics defendants will be jointly referred to as PCYC unless otherwise noted.

6. Defendant Mark Naidicz ("Naidicz") served at all times relevant to this complaint as the Vice President of Business Human Resources for AbbVie. Naidicz is named as the administrator of the Severance Plan under an amendment to the Severance Plan.

7. Defendant Nancy Claybaugh ("Claybaugh") served at all times relevant to this complaint as the Head of Human Resources for PCYC. Naidicz delegated some of his responsibilities and authority as administrator under the Severance Plan, including over Ms. Gu's claims for benefits, to Claybaugh, who administers the Severance Plan from PCYC's corporate offices in Sunnyvale, California.

## IV. GENERAL ALLEGATIONS

8. Ms. Gu was employed by PCYC as a Senior Manager of Corporate Planning Financial Planning and Analysis. Senior Finance Director Dilip Kathuria ("Kathuria") hired Ms. Gu and was her supervisor during her tenure at PCYC.

9. On Thursday, July 16, 2015, Ms. Gu resigned in the heat of the moment



202560.1

2

during a confrontation with Kathuria which humiliated her. Kathuria immediately texted Ms. Gu: "[h]i Diane… take some time… if after 48 hours you still want to leave I will accept" ("48-Hour Offer"). Ms. Gu responded by text, saying, "[o]k . . . we should talk . . ." This exchange created an agreement between PCYC and Ms. Gu that Ms. Gu would continue as a PCYC employee while she reconsidered her resignation and, if Ms. Gu informed Kathuria after 48 hours that she still wanted to resign, then her resignation would be effective when she informed Kathuria. If Ms. Gu did not confirm that she still wanted to resign, she would continue as an employee (the "48-Hour Agreement"). The facts of this exchange and what followed are set forth in the Declaration of Diane Gu Under Penalty of Perjury in Support of Claim for Benefits (which was provided to Defendants on February 16, 2016, with Ms. Gu's appeal from the denial of her benefits claim) which is attached as Exhibit 1.

10.     After reaching the 48-Hour Agreement, Kathuria asked to meet, and met, with Ms. Gu on Friday, July 17, at a Starbucks restaurant for 1½ hours, exchanged texts with her on July 16, 17, 18, and 19 about work issues and ideas, and called her on Sunday July 19. Ms. Gu made written statements within 48 hours of the 48-hour Offer that indicated her desire to continue working, including (1) on July 17 requesting that PCYC restore her employee email account; and (2) on July 18 promising not to leave in the heat of the moment. Despite Kathuria's assurance during the July 19 telephone call that he was going to ask HR to withdraw her resignation, on July 20 Kathuria told Ms. Gu that he was "accepting" her resignation. PCYC's first written notification to Ms. Gu of the termination of her employment was by document dated July 22, 2015, which listed July 20, 2015, as the date of termination.

11.     Pharmacyclics, Inc. was named as administrator in the original Severance Plan. The Severance Plan also originally provided that Pharmacyclics, Inc. would act as administrator through its Compensation Committee. Edward M. Liddy, Roxanne S. Austin, Glenn F. Tilton and Frederick H. Waddell comprise the Compensation Committee (collectively the "Compensation Committee").

12.     The Severance Plan contains Section 25 entitled "Statement of ERISA

Rights:" which includes this language:

> Under ERISA, there are steps you can take to enforce the above rights. For example, if you request materials and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Claybaugh to provide the materials and to pay you up to $110 a day until you receive the materials, unless the materials were not sent due to reasons beyond the control of the Claybaugh. If you have a claim which is denied or ignored, in whole or in part, you may file suit in a federal court. If it should happen that you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court.

13.  The Severance Plan contains Section 2.7 entitled "Involuntary Termination" which includes this language:

> "Involuntary Termination" means (a) a termination of active employment with the Company or any Subsidiary or Affiliate of the Company for any reason other than by reason of an Eligible Employee's retirement . . . voluntary resignation, death or Disability, or a termination for Cause.

Ms. Gu did not voluntarily resign as she complied with the terms of the 48-Hour Agreement and let Kathuria know that she wanted to continue as an employee both within 48 actual hours and before PCYC terminated her on July 20, 2015.

14.  On September 17, 2015, Ms. Gu submitted a claim for benefits under the Severance Plan to Defendants. In her claim, Ms. Gu also asked for a copy of her benefits file, including all documents concerning her termination from PCYC including texts, emails, electronically stored documents (ESI) and all other documents (the "Benefits File"). When Claybaugh failed to provide the Benefits File, on November 24, 2015, Ms. Gu's counsel sent another letter requesting the Benefits File, specifying the documents and ESI requested:

> all documents and electronically stored data ("ESI") concerning her claim including any document, ESI or information that (i) was relied upon in making the benefit determination; (ii) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether it was relied upon in making the benefit determination; and (iii) demonstrates compliance with the administrative processes and safeguards required by ERISA and the Department of Labor. She also requests copies of all of the plan documents, ESI and information including the plan, the summary plan description, any internal rule, guideline,

AARON, RIECHERT, CARPOL & RIFFLE, APC
900 VETERANS BLVD., SUITE 600, REDWOOD CITY, CA 94063

> protocol, or procedure concerning the analysis and determination of claims including Ms. Gu's claim, the claims review process and any appeal procedures. ESI includes voicemails, emails, texts, instant messages, calendars, and any other data concerning Ms. Gu's claims, the process, or internal rules, guidelines, protocols, or procedures.

Claybaugh again failed to provide the Benefits File.

15. Also on November 25, 2015, Administrative Law Judge Pamela Cooke of the California Unemployment Insurance Appeals Board ("CUIAB") Office of Appeals held a hearing on Ms. Gu's appeal from the denial of her unemployment benefits. PCYC denied to the CUIAB that it had terminated Ms. Gu, and claimed that she resigned. PCYC's counsel called Kathuria as PCYC's witness. Kathuria gave an incredible explanation of the events, testifying that all of his communications with Ms. Gu after July 16 (including meeting with her at Starbucks and the texts on July 16, 17, 18, and 19, and his telephone call with Ms. Gu on July 19) were not to work with Ms. Gu to stay at PCYC but to find out what had happened and to retrieve PCYC's laptop. Judge Cooke interrogated both Kathuria and Ms. Gu, who testified on her own behalf.

16. On December 8, 2015, Judge Cooke issued the CUIAB's decision. After hearing Kathuria and Ms. Gu's testimony and reviewing their communications, Judge Cooke found that PCYC had involuntarily terminated Ms. Gu. Judge Cooke began by setting out the issue: whether the claimant had left PCYC voluntarily without good cause. Judge Cooke explained why she believed Ms. Gu's testimony over PCYC's (Kathuria's) testimony:

> What is unequivocal is that the employer paid the claimant through the Monday, without being required to pay the claimant. The other unequivocal fact is that the employer asked the claimant to "take some time . . . if after 48 hours you want to leave I will accept" *was believed to mischaracterized by the employer and with the employer making a self-serving interests about the interpretation of that statement. Overall, the statements of the claimant are believed over that of the employer given the actions and communication by the employer and the inconsistencies, especially in light of interpreting the July 16, 12:38 p.m. e-mail* and paying the claimant through Monday and having continuing text message conversations and in face-to-face meeting with the claimant on the Friday *is inconsistent with the employer's position and testimony.*

1  (emphasis added). Judge Cooke explained why she determined that the "moving party" was

2  PCYC and not Ms. Gu:

> In the present case, the employer did not change its position and *also by sending the text message asking the claimant to consider during the next 48 hours, gave the claimant every indication that the employer was declining the resignation and requesting the claimant to reconsider. The employer also paid the claimant through the Monday, indicating that the claimant was an employee until Monday morning.* Under the circumstances, there was no clear and unequivocal resignation and by the employer paying the claimant through Monday and *pulling the claimant along during the weekend*, the employer is the moving party.

(emphasis added). Finally Judge Cooke rendered her holding:

> In the present case, the employer was not willing to allow the claimant to continue working on the Monday and thereafter, after the claimant had rescinded her resignation. This constitutes a failure to establish a voluntary quit or misconduct by the claimant.

PCYC appealed the decision.

   17.   On December 18, 2015, Claybaugh denied Ms. Gu's benefits claim, stating that Ms. Gu voluntarily resigned:

> As unequivocally stated in the Plan, any employee who voluntarily resigns for [sic] his/her position is not eligible to receive severance benefits. As an "at- will" employee, Ms. Gu had the ability to end her employment relationship with Pharmacyclics at any time, and on July 16, 2015, Ms. Gu did so when she voluntarily resigned from her position by emailing her manager, Mr. Dilip Kathuria her resignation and walking out on her job the same day. In addition, contrary to your letter, at no time did Mr. Kathuria ever state that he would withdraw Ms. Gu's resignation or give her any further time to reconsider, nor did Mr. Kathuria have the authority to do so. *At Pharmacyclics, resignations by any employees are immediately accepted upon receipt. Thus, Ms. Gu's voluntarily resignation was accepted upon receipt on July 16, 2015.*

(emphasis added). In making this decision, Claybaugh ignored all of the facts submitted by Ms. Gu including Kathuria's written 48-Hour Offer, the text exchanges Ms. Gu had with Controller Westermeyer and Kathuria on July 16, 17, 18, and 19, Kathuria's July 17 Starbucks meeting with Ms. Gu, and his July 19 telephone call with Ms. Gu. Claybaugh ignored Judge Cooke's December 8 decision that PCYC had terminated Ms. Gu, not even



202560.1                                 6
SECOND AMENDED COMPLAINT NO. 5:16-CV-02106 NC



1  mentioning it in her denial. Claybaugh's decision was inconsistent with all of the evidence.

2  And Claybaugh again failed to deliver the Benefits File.

3        18.    On February 16, 2016, Ms. Gu appealed the denial of her claim for benefits to

4  Claybaugh. Ms. Gu included with her appeal the transcript of Kathuria's testimony, Judge

5  Cooke's decision, the text communications between Kathuria, PCYC's Controller

6  Christopher Westermeyer, and Ms. Gu, and Ms. Gu's declaration under penalty of perjury

7  (Ex. 1). She informed Claybaugh that her preparation of the appeal had been hampered by

8  the lack of the Benefits File. Still Claybaugh did not provide the Benefits File.

9        19.    On February 25, 2016, the CUIAB issued its decision affirming Judge

10 Cooke's ruling that PCYC terminated Ms. Gu. The Board reviewed the facts and agreed with

11 Judge Cooke that, after Diane resigned, PCYC asked Diane to reconsider, giving her 48

12 hours; PCYC continued to have discussions with Diane that were "reasonably understood to

13 be regarding whether she would return to work;" and that PCYC "essentially did not accept

14 the claimant's resignation, and it was withdrawn prior to the employer deciding to accept her

15 resignation." Then the Board issued its holding:

> In this case, the claimant reasonably understood she was discharged for walking out of a meeting where she was upset due to the employer's allegations concerning the disclosure of facts. The claimant left work in the heat of the moment. There are no prior warnings in the record. As this is an isolated instance of poor judgment, the claimant was discharged for reasons other than misconduct under [California Unemployment Insurance Code] section 1256.[1]

21       20.    On March 3, 2016, Ms. Gu sent Claybaugh by Federal Express a letter

22 containing supplemental information including the CUIAB's February 25, 2016, decision.

23       21.    Under the Severance Plan Claybaugh had 60 days to decide Ms. Gu's appeal,

24 which meant that her response was due April 16, 2016. For "special circumstances" the

25 Severance Plan allowed Claybaugh to extend the deadline by up to 60 days if needed to

---

[1] California Unemployment Insurance Code Section 1256 provides, in relevant part: "An individual is disqualified for unemployment compensation benefits if the director finds that he or she left his or her most recent work voluntarily without good cause or that he or she has been discharged for misconduct connected with his or her most recent work."

1  review the appeal. On April 15, 2016, the day before her response was due, Claybaugh

2  extended the deadline by 60 days to June 15, 2016, listing the "special circumstances" as the

3  need to obtain the recording of the CUIAB hearing and transcribe it. Defendants had known

4  about the transcript since at least February 16 when Ms. Gu provided the transcript of

5  Kathuria's testimony with her appeal.

6        22.    When Claybaugh failed to produce the Benefits File, on April 21, 2016, Ms.

7  Gu filed her complaint in this case against Claybaugh and the Severance Plan as defendants.

8  She named Claybaugh because Claybaugh represented that she was the Claybaugh. On April

9  27, 2016, Ms. Gu filed the first amended complaint to add as defendants the Compensation

10  Committee since they were also named as the administrator in the original Severance Plan.

11  Ms. Gu found the original Severance Plan on the internet.

12        23.    On May 18, 2016, Ms. Gu received correspondence from Defendants' new

13  counsel. That communication and its attachments are attached to this amended complaint as

14  Exhibit 2. In the correspondence, Defendants provided for the first time some 2015

15  amendments to the Severance Plan that named Naidicz as the administrator of the Severance

16  Plan and documents in which Naidicz delegated some of his duties to Claybaugh. Defendants

17  then threatened Rule 11 sanctions if Ms. Gu did not "immediately" dismiss the

18  Compensation Committee. Further, Defendants claimed that Ms. Gu failed to follow the

19  claim and appeal procedure set forth in Section 14 of the Severance Plan (the portion that

20  deals with benefits claims) and that her filing of the first amended complaint in this case was

21  "premature."

22        24.    This was the first time Ms. Gu had seen the documents attached to Exhibit 2.

23  These were exactly the documents she had requested Claybaugh provide as part of the

24  Benefits File, and that Claybaugh failed to provide.

25        25.    By letter dated May 26, 2016, Claybaugh denied Ms. Gu's appeal, using a

26  different reason this time: Claybaugh claimed that Ms. Gu did not rescind her resignation

27  within 48 hours of the 48-Hour Offer. Claybaugh claimed in the letter to attach "all other

28  documents relied on in preparing this response." However, Claybaugh failed to provide all of



AARON, RIECHERT, CARPOL & RIFFLE, APC
900 VETERANS BLVD., SUITE 600, REDWOOD CITY, CA 94063

the Benefits File. She failed to produce all documents relevant to Ms. Gu's claim, including communications, documents submitted by Ms. Gu, and other documents which were requested by Ms. Gu. She failed to produce any documents or ESI demonstrating any investigation other than reviewing PCYC's personnel file, the documents submitted by Ms. Gu, the transcript of the CUUAB hearing, and some internet traffic.

**FIRST CLAIM FOR RELIEF**
**FAILURE TO PRODUCE BENEFITS FILE AND FOR PENALTIES**
[29 U.S.C. §1132 (c)(1); 29 C.F.R. §2575.502c-1]

26. Gu realleges Paragraphs 1 through 25.

27. Claybaugh and Naidicz are the designated administrator of the Severance Plan.

28. Ms. Gu requested the Benefits File from Defendants numerous times beginning on September 17, 2015. Defendants were obligated under ERISA to produce the Benefits File and all of its contents to Ms. Gu within 30 days of Ms. Gu's September 17, 2015 request.

29. Thirty days passed and Defendants failed to provide Ms. Gu with the Benefits File. Defendants produced some of the Benefits File on May 27, 2016; however, Defendants still have not produced the complete Benefits File. Defendants did not produce all documents and ESI that "was submitted, considered, or generated in the course of making the benefit determination, without regard to whether it was relied upon in making the benefit determination." Rather, Defendants admitted that they produced only documents and ESI "relied on" in preparing Defendants' response to the appeal. Defendants withheld relevant documents and ESI that they were obligated to produce.

30. For example, Defendants did not produce any communications, not a single one, between Claybaugh and others about Ms. Gu's claim. It is inconceivable that Claybaugh investigated, analyzed, and decided Ms. Gu's claims and appeal without communicating with at least Kathuria, Controller Westermeyer, and her own HR department colleagues about what happened between July 16, 2016 and July 22, 2016 (the date HR first created any documents about Ms. Gu's termination). If she did not communicate with anyone, or failed





1 to take notes about her communications, she violated her fiduciary duties to act solely for the
2 purpose of providing plan benefits to the participants and to carry out her duties with the
3 skill, prudence and diligence required of an administrator.

4     31. Further, Defendants failed to produce documents submitted by Ms. Gu. For
5 example, Defendants did not produce Ms. Gu's March 3, 2016, letter providing supplemental
6 information about her benefits claim.

7     32. Ms. Gu brings this claim under section 502(c) of ERISA. 29 U.S.C. § 1132(c).
8 Section 502(g)(1) of ERISA provides the Court with discretion to award attorneys' fees and
9 costs to Ms. Gu. 29 U.S.C. § 1132(g)(1).

10     Wherefore, Gu prays for judgment as set forth below.

SECOND CLAIM FOR RELIEF
FOR ERISA BENEFITS

13     33. Ms. Gu realleges Paragraphs 1 through 33.

14     34. Under the Severance Plan, Defendants were obligated to pay severance
15 benefits to Ms. Gu. Defendants have refused to pay any benefits to Ms. Gu. The obligations
16 of ERISA fiduciaries are set forth in Section 404(a)(1) of ERISA which provides in relevant
17 part:

> A fiduciary shall discharge his duties with respect to a Plan solely in the interest of the participants and beneficiaries and
>
> (A)    for the exclusive purpose of:
>
>     (i.)    providing benefits to participants and their beneficiaries . . .
>
> ¶
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> (D) in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

28 29 U.S.C. § 1104(a)(1). Defendants violated these duties and instead acted in their own self-

interest because of Claybaugh's conflicting role as PCYC's Head of Human Resources; Claybaugh failed to carry out her duties with skill, prudence and diligence; and she abused her discretion by denying Ms. Gu's claim for benefits. As PCYC's Head of Human Resources, Claybaugh acted to justify and defend her department's and PCYC's actions in terminating Ms. Gu; further, Defendants had an incentive to save PCYC $300,000. These conflicting loyalties resulted in an inadequate investigation which focused only on finding reasons to justify HR's and PCYC's claims that Ms. Gu had resigned and not been terminated. Defendants' refusal to provide the Benefits File also demonstrates their bias and desire to justify PCYC's claims rather than provide Ms. Gu benefits under the Severance Plan. Naidicz failed to supervise Claybaugh in carrying out his duties as the designated administrator of the Severance Plan. The Court should review Defendants' actions under a de novo standard or, at a minimum, adjust the sliding scale of discretion far toward Ms. Gu because of the irregularities and conflicts.

35. Defendants' bias is demonstrated by the reason Claybaugh first gave for denying Ms. Gu's claim: that at PCYC "resignations by any employees are immediately accepted upon receipt. Thus, Ms. Gu's voluntarily [sic] resignation was accepted on receipt on July 16, 2015." This reason was contradicted by the documentation generated by PCYC's (and Claybaugh's) HR department on July 22 that stated Ms. Gu's employment terminated on July 20 (not July 16). It was inconsistent with Kathuria's testimony at the CUIAB hearing, which had occurred by the time Claybaugh rejected Ms. Gu's claim. This reason was inconsistent with every document and the narrative provided by Ms. Gu with her claim, including Kathuria's July 16 48-Hour Offer, the text exchanges Ms. Gu had with Controller Westermeyer and Kathuria on July 16, 17, 18, and 19, Kathuria's July 17 Starbucks meeting with Ms. Gu, Kathuria's July 19 telephone call with Ms. Gu, and Judge Cooke's December 8 decision that PCYC had terminated Ms. Gu.

36. Defendants arbitrarily extended their 60-day deadline for deciding Ms. Gu's appeal by claiming that they needed an additional 60 days to obtain the transcript of the November 25, 2016 CUIAB hearing, which they had known about at least as early as

February 16, 2016 when Ms. Gu included Kathuria's portion of the transcript in her appeal.

37. In May, Claybaugh switched Defendants' stated reasons for denying Ms. Gu's benefits: now she admitted that PCYC had entered into a 48-Hour Agreement but claimed that Ms. Gu failed to revoke her resignation within 48 hours. The problem with Defendants' reliance on totally different grounds is that all of the information that was provided in Ms. Gu's appeal was available to Defendants when they originally denied Ms. Gu's claim. Further, the new excuse that Ms. Gu did not revoke the resignation within 48 hours fails for many reasons, including those articulated by Judge Cooke and the CUIAB in their decisions. The 48 Hour Agreement did not require Ms. Gu to formally revoke her resignation: it actually required Ms. Gu to affirmatively indicate after 48 hours that she "still want[ed] to leave" for her resignation to be effective. PCYC retained Ms. Gu as an employee through July 20: it did not terminate her on Saturday July 18, the date it now claims the 48 hours ran out. PCYC's representatives, including Kathuria and Controller Westermeyer, both communicated with Ms. Gu on July 19; neither of them told Ms. Gu that she was no longer employed. If Ms. Gu's resignation had been accepted on July 16 (or July 18 under the new claim) then, in Judge Cooke's words, they were "pulling [her] along during the weekend [by their communications which led Ms. Gu to believe she was still employed and their failure to advise her that she was no longer an employee]" Defendants did not attempt to explain why they rejected Judge Cooke's detailed recital of the testimony and documents and her conclusion and the concurring conclusion of the CUIAB. Defendants owed Ms. Gu a rational explanation for disagreeing with the two CUIAB decisions against PCYC; they did not provide it.

38. If Claybaugh interviewed Kathuria, Controller Westermeyer, HR department staff who were part of the events between July 16 and July 22, and others, she either failed to take notes of the interviews or she failed to produce her notes. If she conducted any investigation at all she either failed to record the investigation or she failed to produce her records of her investigation. As Head of Human Resources she had to know the importance of documenting personnel actions, yet she failed to document her investigation of Ms. Gu's

benefits claim. As a fiduciary, Claybaugh is charged with the highest duty to Ms. Gu. The documents produced and statements by Claybaugh demonstrate that she did not do everything she could to carry out her fiduciary duties to Ms. Gu; rather, she did nothing to carry out her fiduciary duty to Ms. Gu and everything she could to justify and defend PCYC's termination of Ms. Gu. There is nothing in the Benefits File demonstrating that Claybaugh conducted any independent investigation of Ms. Gu's claim as her fiduciary.

39. Defendants' refusal to pay benefits due under the Severance Plan violates the terms of the Severance Plan and is a violation of ERISA.

40. Ms. Gu brings this claim under section 502(a)(1)(B) of ERISA. 29 U.S.C. § 502(a)(1)(B). Section 502(g)(1) of ERISA provides the Court with discretion to award attorneys' fees and costs to Ms. Gu. 29 U.S.C. § 1132(g)(1).

41. As a result of Defendants' violation of ERISA, Ms. Gu has suffered damages in an amount of at least $300,000, which will be proven at trial.

Wherefore, Gu prays for judgment as set forth below.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF ERISA: TERMINATION TO AVOID PAYING BENEFITS

42. Ms. Gu realleges Paragraphs 1 through 41.

43. Section 510 of ERISA provides in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140. Defendants violated Section 510 when they terminated Ms. Gu to avoid paying out her severance benefits.

44. Ms. Gu brings this claim under section 502(a)(1)(B) of ERISA. 29 U.S.C. § 502(a)(1)(B). Section 502(g)(1) of ERISA provides the Court with discretion to award attorneys' fees and costs to Ms. Gu. 29 U.S.C. § 1132(g)(1).




45.   As a result of Defendants' violation of ERISA, Ms. Gu has suffered damages in an amount of at least $300,000, that will be proven at trial.

46.   Ms. Gu brings this claim under section 502(a)(1)(B) of ERISA. 29 U.S.C. § 502(a)(1)(B). Section 502(g)(1) of ERISA provides the Court with discretion to award attorneys' fees and costs to Ms. Gu. 29 U.S.C. § 1132(g)(1).

WHEREFORE, Ms. Gu prays for judgment as set forth below.

## PRAYER FOR RELIEF

1.   For an order that Defendants provide Plaintiff Diane Gu with a complete copy of Ms. Gu's Benefits File within 14 days of the Court's order at no cost to Ms. Gu including all documents and electronically stored data ("ESI") concerning her claim including (1) any document, ESI or information that (i) was relied upon in making the benefit determination; (ii) was submitted, considered, or generated while making the benefit determination, without regard to whether it was relied upon in making the benefit determination; and (iii) demonstrates compliance with the administrative processes and safeguards required by ERISA and the Department of Labor; the plan documents, ESI; (2) information including the plan, the summary plan description, any internal rule, guideline, protocol, or procedure concerning the analysis and determination of claims including Ms. Gu's claim, the claims review process and any appeal procedures. ESI includes voicemails, emails, texts, instant messages, calendars, and any other data concerning Ms. Gu's claims, the process, or internal rules, guidelines, protocols, or procedures; and (3) all communications Defendants had with anyone concerning Ms. Gu or her benefits claim, including counsel;

2.   For compensatory damages in excess of $300,000, according to proof;

3.   For reinstatement, back pay, and restitution of all benefits including equity payouts that Defendants precluded Ms. Gu from obtaining through termination of Ms. Gu to avoid paying her benefits under the Severance Plan in an amount in excess of $300,000;

4.   For penalties of $110 per day from October 17, 2015 (30 days after Ms. Gu's September 17, 2015 request for the Benefits File) through the date Defendants produce the entire Benefits File under 29 U.S.C. §1132 (c) (1) and 29 C.F.R. §2575.502c-1;



202560.1

14

     5.     For costs of suit;

     6.     For attorneys' fees;

     7.     For interest;

     8.     For a declaration that Ms. Gu is entitled to severance benefits under the Severance Plan; and

     9.     For any other relief the Court deems proper.

Respectfully submitted,

Dated:  July __, 2016

AARON, RIECHERT, CARPOL
 & RIFFLE, APC

By:_____
   W. George Wailes
   Attorneys for Plaintiff, Diane B. Gu